IN THE UNITED STATES DISTRICT COURT
OF THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| AMY LEICHTENBERG, on her own behalf and as administrator of the ESTATE OF DUNCAN LEICHTENBERG, and as administrator of the ESTATE OF JACK LEICHTENBERG, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 10-CV-1253 |
| v. | )<br>) Judge GORMAN |
| CITY OF LEROY, POLICE OFFICER DUSTIN WISEMAN, POLICE OFFICER NATHAN WILKINS, POLICE OFFICER JASON WILLIAMSON, and other UNKNOWN OFFICERS OF THE LEROY POLICE DEPARTMENT, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiff Amy Leichtenberg, on her own behalf and as administrator for the Estates of Duncan and Jack Leichtenberg, by her counsel, Loevy & Loevy, complains of Defendants City of LeRoy, Police Officer Dustin Wiseman, Police Officer Nathan Wilkins, Police Officer Jason Williamson, and other Unknown Officers of the LeRoy Police Department (collectively the "Defendant Officers").

1

## Introduction

1. This is an action under 42 U.S.C. § 1983 and state law to recover damages for the Defendants' role in the tragic deaths of 9-year-old Duncan and 7-year-old Jack Leichtenberg.

2. Compounding this tragedy is the fact that it was completely preventable. Duncan and Jack were killed by their father, Michael Connolly, a mentally unstable man embroiled in a custody dispute with Plaintiff. Despite Defendant Officers' knowledge of the threat Mr. Connolly posed to the boys (based on his previous 57 violations of protective orders) the Defendant Officers thwarted attempts to investigate when Mr. Connolly absconded with the boys. As a result, two days later, Mr. Connolly killed Duncan and Jack.

## Parties

3. Plaintiff, Amy Leichtenberg, a resident of LeRoy, Illinois, is the mother of Duncan and Jack Leichtenberg, who were abducted and murdered by their father, Michael Connolly, Ms. Leichtenberg's ex-husband.

4. The Estates of Duncan and Jack Leichtenberg represent the rights and interests of Duncan and Jack Leichtenberg. The Estates were opened in McLean County, Illinois, on April 20, 2010. Ms. Leichtenberg is the administrator of the boys' Estates.

2

5. Defendant Police Officer Dustin Wiseman was a police officer, and was so employed by the LeRoy Police Department in LeRoy, Illinois, during all relevant times. On information and belief, Defendant Wiseman is no longer employed by the LeRoy Police Department. On information and belief, Defendant Wiseman is a resident of McLean County.

6. Defendant Police Officer Jason Williamson is a police officer employed by the LeRoy Police Department, and was so employed during all times relevant. On information and belief, Defendant Williamson is a resident of McLean County.

7. Defendant Police Officer Nathan Wilkins is a police officer employed by the LeRoy Police Department, and was so employed during all times relevant. On information and belief, Defendant Wilkins is a resident of McLean County.

8. Defendant Officers were at all times relevant employees of the LeRoy Police Department and were acting within the scope of their employment and in their official capacities at the times of the incidents giving rise to the causes of action set forth below. Defendant Officers, at all times relevant, acted under the color of law.

9. Defendant City of LeRoy, Illinois is a municipal corporation under the laws of the State of Illinois and at all relevant times employed Defendants Wiseman, Wilkins, Williamson,

and other Unknown Police Officers of the LeRoy Police Department.

## Jurisdiction and Venue

10. Jurisdiction and venue is proper in McLean County, Illinois because the Defendant Officers reside in McLean County and all of the conduct complained of occurred in McLean County.

## Facts

11. Ms. Leichtenberg and Mr. Connolly were married on November 20, 1994, in Cook County, Illinois.

12. During their marriage, Mr. Connolly was emotionally abusive and subjected Ms. Leichtenberg to extreme and repeated mental cruelty.

13. The marriage was dissolved on November 20, 2007 in McLean County, Case No. 07-D-231.

14. For years, Ms. Leichtenberg fought to protect Duncan and Jack from their father because of his history of abuse and his disturbed mental state.

15. Ms. Leichtenberg had obtained several emergency orders of protection against Mr. Connolly protecting her, Duncan, and Jack from him while living in McHenry County, including orders entered on August 3, 2005, May 1, 2006, May 17, 2006, June 7, 2006, July 10, 2006, July 24, 2006, July 27, 2006, August 25, 2006, and September 8, 2006.

16. On April 13, 2007, Ms. Leichtenberg obtained an emergency order of protection in McLean County, which denied Mr. Connolly any contact with Duncan and Jack.

17. On May 2, 2007, Ms. Leichtenberg obtained a final order of protection in McLean County, Case No. 07 OP 75 ("Protective Order"), which was in effect during all times relevant.

18. The Protective Order required Mr. Connolly to stay 500 feet from Ms. Leichtenberg and her home, prohibited Mr. Connolly from entering or visiting Duncan's and Jack's school, LeRoy Elementary, and barred him from obtaining any school records. The Protective Order further provided that Mr. Connolly was only allowed supervised visitation with Duncan and Jack every other Saturday for two hours because he was likely to use the visits to act in a manner that was not in the best interest of the boys and to abuse or harass Ms. Leichtenberg.

19. Defendant Officers knew about the Protective Order. Indeed, Defendant Officers witnessed Mr. Connolly's numerous violations of the Protective Order. According to Defendant Police Officer Jason Williamson, Mr. Connolly violated the Protective Order, or other orders of protection, at least 57 times. On at least one occasion, Defendant Police Officer

Nathan Wilkins arrested Mr. Connolly for violating the orders of protection.

20. Moreover, Mr. Connolly was seriously disturbed individual. He had previously threatened to commit suicide on several occasions, which was known to the Defendant Officers.

21. Initially, Mr. Connolly had no visitation rights with Duncan and Jack. Over time, despite Mr. Connolly's disturbed mental state and repeated threats to kill himself, Mr. Connolly was able to have limited supervised visits with Duncan and Jack.

22. Initially, Mr. Connolly was only allowed two hour supervised visits every other Saturday with the boys at the Children's Foundation in Bloomington, Illinois.

23. Later, Mr. Connolly was allowed supervised visits at his home. Because Mr. Connolly posed a threat to Duncan and Jack, Plaintiff made sure that each of these visits were supervised by one of her representatives.

24. On January 13, 2009, for the first time Mr. Connolly was permitted unsupervised overnight visits every other weekend from 10 a.m. on Saturday to 6:00 p.m. on Sunday.

25. Per court order, and at the Plaintiff's request, all of the pick-ups and drop-offs of the boys were to occur at Defendant City of LeRoy's Police Department.

6

26. Throughout this time, Mr. Connolly continued to exhibit a disturbed mental state.

27. In the weeks preceding the boys' murders, Ms. Leichtenberg grew increasingly fearful that Mr. Connolly would harm the children. Mr. Connolly had lost his job and was acting increasingly angry and anxious.

28. The Wednesday before the boys were abducted, Ms. Leichtenberg went to pick up Duncan and Jack after their mid-week visit with Mr. Connolly. Strangely, the boys refused to get out of Mr. Connolly's car and return home with Ms. Leichtenberg. This had never happened before and was both surprising and disturbing to Ms. Leichtenberg. The following day Ms. Leichtenberg learned that the boys did not want to get out of the car because Mr. Connolly had told them he would be going away for a long time and would not be able to see them.

29. Due to Mr. Connolly's disturbing behavior, on Saturday, March 7, 2009, Ms. Leichtenberg contacted the LeRoy Police Department and spoke with Defendant Wiseman.

30. Ms. Leichtenberg told Defendant Wiseman that she was afraid Mr. Connolly would flee with the boys because of his recent disturbing behavior, including telling Defendant Wiseman about the incident on the preceding Wednesday, and that as a

7

result she would not surrender the boys to Mr. Connolly later that day.

31. Defendant Wiseman did not address her concerns. Rather, he threatened Ms. Leichtenberg with arrest if she did not surrender the boys to Mr. Connolly later that day, despite the fact that Defendant Wiseman had no basis to arrest her.

32. Because Ms. Leichtenberg feared that her arrest could jeopardize her custody of the boys, and thereby allow Mr. Connolly to have even further access to Duncan and Jack, after her conversation with Defendant Wiseman she reluctantly concluded that she must surrender Duncan and Jack to Mr. Connolly.

33. At 10:00 a.m., Ms. Leichtenberg gave Duncan and Jack to Mr. Connolly in the parking lot of the LeRoy Police Department. She did this in the presence of Defendant Wiseman.

34. Pursuant to the custody order, Ms. Leichtenberg returned to the LeRoy Police Department shortly before 6:00 p.m. the following evening to retrieve Duncan and Jack. Defendant Wiseman was present.

35. However, Mr. Connolly had absconded with the boys in obvious violation of the Protective Order and he did not return the boys to Ms. Leichtenberg.

36. Ms. Leichtenberg was extremely worried and scared because of Mr. Connolly's threats to kill himself and recent odd behavior. This was also the first time that Mr. Connolly had not returned the boys on time. She told the Defendant Officers that Mr. Connolly's failure to bring the boys back on time, combined with his comments about leaving for a long time, was a very bad sign and she feared for the boys' safety.

37. Ms. Leichtenberg immediately asked Defendant Wiseman and the LeRoy Police Department to initiate an investigation into the safety and whereabouts of Duncan and Jack.

38. Defendant Wiseman, and other Unknown LeRoy Police Officers, initially declined to investigate Duncan's and Jack's disappearance.

39. Eventually, an officer of the LeRoy Police Department contacted the Bloomington Police Department and requested that they perform a "well check" at Mr. Connolly's Bloomington home.

40. On information and belief, the Bloomington Police Department went to Mr. Connolly's residence and found that nobody was home.

41. On information and belief, at some time during March 8, 2009, the Illinois State Police contacted the LeRoy Police Department about issuing an Amber Alert, an alert system designed to prevent violent attacks against abducted children.

42. On information and belief, Defendant Officers told the Illinois State Police that Duncan and Jack were not in immediate danger, which resulted in the Illinois State Police **not** issuing an Amber Alert. The Defendant Officers relayed this false information despite knowing about Mr. Connolly's abusive behavior, disturbed mental state, and his 57 previous violations of the Protective Order and other orders of protection.

43. Only after Amy Leichtenberg's attorney, Helen Ogar, reached the McLean County Sheriff's Department and the McLean County State's Attorney and conveyed the extreme seriousness of the situation was the Amber Alert issued, approximately twenty-six (26) hours after Jack and Duncan had been reported missing to the Defendant Officers.

44. On or about Monday, March 9, 2009, before the Amber Alert issued, Mr. Connolly mailed Ms. Leichtenberg a letter from a post office in northern Illinois.

45. Jack's and Duncan's bodies were later found nearby in Mr. Connolly's car, which was identified in the Amber Alert. It has been determined that the boys likely died on or about March 10, 2009. They had been killed by Mr. Connolly, who then took his own life.

46. Defendant Officers' actions, including threatening Ms. Leichtenberg with arrest, failing to promptly investigate

Duncan's and Jack's disappearance and interfering with the Illinois State Police issuing an Amber Alert, allowed Mr. Connolly the opportunity to kill Duncan and Jack during the two days after they went missing before their death. Absent Defendant Officers' interference, Duncan and Jack would not have been killed.

47. Thus, because of Defendant Officers' actions and omissions, Mr. Connolly was able to execute his plan to kill Duncan and Jack.

**Count I: State Created Danger, 42 U.S.C. §1983**

48. Plaintiff incorporates all of the paragraphs in this Complaint as if fully restated here.

49. In the manner described in this Complaint, the Defendant Officers violated Duncan's, Jack's and Amy Leichtenberg's constitutional rights. The Defendant Officers violated Plaintiffs' constitutional rights.

50. Defendant Officers' actions caused and/or increased the danger Mr. Connolly posed to Duncan and Jack Leichtenberg by causing Ms. Leichtenberg to produce Duncan and Jack Leichtenberg to Mr. Connolly by threatening to arrest her, despite knowing the serious threat he posed to the boys.

51. In addition, Defendant Officers failed to promptly investigate, locate, and protect Duncan and Jack Leichtenberg

11

once their father failed to return them to Ms. Leichtenberg on March 8, 2009.

52. Moreover, Defendant Officers told the Illinois State Police not to issue an Amber Alert, so that the alert was not issued until at least 26 hours after Mr. Connolly's abduction of Duncan and Jack, which allowed Mr. Connolly to move about the state uninhibited for more than a day.

53. The Defendant Officers' actions proximately caused Duncan and Jack Leichtenberg great bodily harm and death, as well as great pain and suffering to Plaintiff Amy Leichtenberg.

54. The Defendant Officers' actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

55. Defendant Officers' failure to protect Duncan and Jack Leichtenberg "shocks the conscience" in that the Defendant Officers failed to take seriously the threat Mr. Connolly posed and respond immediately to the boys' abduction and promptly cause an Amber Alert to issue.

56. One or more members of the LeRoy Police Department, acting pursuant to the policies and practices of the City of LeRoy, violated Plaintiffs' constitutional rights in the manner alleged herein.

57. As a result of the wrongful conduct described above, Duncan and Jack Leichtenberg suffered great bodily harm and death and Plaintiff suffered damages, including, but not limited to, substantial mental distress and anguish.

**Count II: Municipal Liability, 42 U.S.C. § 1983**

58. Plaintiff incorporates all of the paragraphs in this Complaint as if fully restated here.

59. Defendant City of LeRoy is a municipal corporation which is responsible for the training of the LeRoy Police Officers with respect to domestic abuse and kidnapping protocols.

60. Plaintiff's injuries were proximately caused by the policies and practices of Defendant City of LeRoy for failing to train its police officers regarding domestic abuse and kidnapping response protocols.

61. Specifically, as a matter of both policy and practice, the Defendant City of LeRoy encourages, and is thereby the moving force behind, the kind of misconduct at issue here by failing to adequately train its employees regarding domestic abuse and kidnapping protocols, such that its failure to do so manifests deliberate indifference.

62. Defendant City of LeRoy's failure to train its police officers regarding domestic abuse and kidnapping protocols

resulted in the Defendant Officers' or any other City of LeRoy police officer's violation of Duncan's, Jack's and Ms. Leichtenberg's constitutional rights and the boys' deaths. Specifically, the City of LeRoy's failure to train their employees led to the constitutional violations described in Count I.

63. As a result, Duncan and Jack Leichtenberg suffered great bodily harm and death, and Plaintiff suffered damages, including, but not limited to, mental anguish and distress.

### Count III: Wrongful Death

64. Plaintiff incorporates all of the paragraphs in this Complaint as if fully restated here.

65. Plaintiff claims damages for the wrongful deaths of Duncan and Jack Leichtenberg, and for her loss of their services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, and for their mental anguish caused by this loss, as well as for funeral and burial expenses pursuant to 740 ILCS § 180/1, referred to as the Illinois Wrongful Death Act.

66. As explained more fully in the preceding paragraphs, Duncan's and Jack's deaths were caused by the wrongful conduct of the Defendant Officers.

67. Defendant Officers owed a duty to Duncan and Jack Leichtenberg to protect them from the known danger posed by Mr. Connolly's disturbing behavior, but nevertheless threatened the arrest of Ms. Leichtenberg when she expressed her desire to keep her boys from their father.

68. The Defendant Officers also owed a duty to Duncan and Jack Leichtenberg to protect them from the known danger posed by Mr. Connolly and to promptly investigate their whereabouts when they were made aware that their father, Mr. Connolly, violated a court order in failing to return the boys to their mother on March 8, 2009.

69. The Defendant Officers' actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

70. The Defendant Officers' actions proximately caused Duncan and Jack Leichtenberg great bodily harm and death, as well as great pain and suffering to Plaintiff.

71. Pursuant to the Illinois Wrongful Death Statute, 740 ILCS 180/1, Defendant Officers are liable to Plaintiff for causing the deaths of Duncan and Jack Leichtenberg and for the damages she has suffered, including, but not limited to, the loss of companionship and pecuniary loss.

**Count IV: Illinois Domestic Violence Act**

72. Plaintiff incorporates all of the paragraphs in this Complaint as if fully restated here.

73. Defendant Officers were aware that Ms. Leichtenberg, Duncan and Jack are protected persons under the Illinois Domestic Violence Act, 750 ILCS 60/101, *et seq.*

74. Defendant Officers knew that Ms. Leichtenberg, Duncan and Jack were protected under the Illinois Domestic Violence Act because they knew that the Protective Order was in effect protecting Ms. Leichtenberg, Duncan and Jack from Mr. Connolly. Defendant Officers further had knowledge that Mr. Connolly had repeatedly violated the Protective Order.

75. Defendant Officers breached their duties as law enforcement officers under the Illinois Domestic Violence Act by their willful and wanton acts and omissions, including, but not limited to, Defendant Officers' threat to Ms. Leichtenberg that they could arrest her if she failed to produce her boys to Mr. Connolly for his custodial time with Duncan and Jack on Saturday, March 7, 2009; their failure to respond to and investigate Mr. Connolly's kidnapping of the boys; their failure to locate or protect Duncan and Jack Leichtenberg from imminent harm; and their interference with the issuance of an Amber Alert

16

that would have prevented Mr. Connolly having the opportunity to kill them and himself.

76. Defendant Officers' acts and omissions proximately caused the deaths of Duncan and Jack Leichtenberg.

77. Due to the above described misconduct, Duncan and Jack Leichtenberg suffered great bodily harm and death, and Plaintiff suffered damages, including but not limited to, emotional anguish and distress.

**Count V: Intentional Infliction of Emotional Distress**

78. Plaintiff incorporates all of the paragraphs in this Complaint as if fully restated here.

79. The acts of Defendant Officers described above constituted intentional infliction of emotional distress. Their actions were extreme and outrageous in that Defendant Officers threatened to arrest Ms. Leichtenberg, failed to immediately respond to Mr. Connolly's kidnapping of Duncan and Jack, and interfered with the issuance of an Amber Alert by the Illinois State Police.

80. This extreme and outrageous conduct was undertaken with intent and/or knowledge that the conduct was extremely likely to inflict emotional distress on Ms. Leichtenberg.

81. As a result of Defendant Officers' actions, Ms. Leichtenberg suffered damages, including, but not limited to, extreme emotional distress.

### Count VI: Indemnification

82. All of Defendant Officers' actions were undertaken under color of law and within the scope of their employment as police officers of the LeRoy Police Department such that their employer, the City of LeRoy, is liable for their actions.

83. Illinois law provides that Defendant City of LeRoy must indemnify the Defendant Officers for any liability arising out of the scope of their employment activities. Accordingly, the City of LeRoy must pay any tort judgment awarded to Plaintiff for compensatory damages resulting from the Defendant Officers' actions.

### Count VII: Respondeat Superior

84. Additionally, in committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the LeRoy Police Department acting at all relevant time within the scope of their employment. Defendant City of LeRoy is liable as principal for all torts committed by its agents.

WHEREFORE, Plaintiff Amy Leichtenberg, on her own behalf and on behalf of the Estates of Duncan and Jack Leichtenberg, requests an entry of judgment in her favor and against Defendants, CITY OF LEROY, OFFICER WISEMAN, OFFICER WILKINS, OFFICER WILLIAMSON, and UNKNOWN OFFICERS OF THE LEROY POLICE DEPARTMENT awarding compensatory damages, costs and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems proper.

**Jury Demand**

Plaintiff Amy Leichtenberg, on her own behalf and on behalf of the Estates of Duncan and Jack Leichtenberg, demands a trial by jury on all issues so triable.

Respectfully submitted,

___/s/ Heather Lewis Donnell
One of Plaintiff's Attorneys

Arthur Loevy
Jon Loevy
Russell Ainsworth
Samantha Liskow
Heather Lewis Donnell
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, Illinois 60607
Telephone: (312) 253-5900
Fax:  (312) 253-5902

19